EXHIBIT A

IN THE STATE COURT OF BIBB COUNTY
STATE OF GEORGIA

🔥 EFILED IN OFFICE
CLERK OF STATE COURT
BIBB COUNTY, GEORGIA

20-SCCV-092241
SFL
DEC 15, 2020 12:47 PM

Patricia M. Gravette-Clerk of State Court
Bibb County, Georgia

TONYA STUCKEY, Individually, as
Surviving Parent and Next of Kin of
BRYAN D. CRANMORE, Deceased,

       Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY and
CENTRAL OF GEORGIA RAILROAD
COMPANY,

       Defendants.

JURY TRIAL DEMANDED

CIVIL ACTION FILE
NO. _____

## COMPLAINT

Plaintiff TONYA STUCKEY, Individually, as Surviving Parent, and as Next of Kin of BRYAN D. CRANMORE, Deceased, and on behalf of the heirs of BRYAN D. CRANMORE, files this Complaint.

### PARTIES AND JURISDICTION

1.

Norfolk Southern Railway Company ("NSRC") is a foreign corporation with its principal place of business in Atlanta, Fulton County, Georgia.

2.

NSRC may be served with process through its Registered Agent, J. Steven Stewart, 577 Mulberry Street, Suite 1500, Macon, Bibb County, Georgia.

-1-

3.

NSRC is subject to the jurisdiction of this Court.

4.

Venue as to NSRC is proper in this county.

5.

NSRC has been served with Summons and Complaint as allowed by law.

6.

Central of Georgia Railroad ("COG") is a domestic corporation with its principal place of business in Macon, Bibb County, Georgia

7.

COG may be served with process through its Registered Agent, J. Steven Stewart, 577 Mulberry Street, Suite 1500, Macon, Bibb County, Georgia .

8.

COG is subject to the jurisdiction of this Court.

9.

Venue as to COG is proper in this county.

10.

COG has been served with Summons and Complaint as allowed by law.

11.

Throughout this Complaint, NSRC and COG will be collectively referred to as "NSR."

12.

At all times relevant to this action, the freight train crews, track inspectors, division engineers, dispatchers and management of COG and NSRC were the agents of NSRC and COG and acting within the scope of that agency. As a result, NSR is vicariously liable for the conduct of these agents.

13.

Tonya Stuckey, who files this action Individually, as Surviving Parent and as Next of Kin of Bryan D. Cranmore, Deceased, and on behalf of the heirs of Bryan D. Cranmore ("Plaintiff"), is an individual resident and citizen of the State of Georgia.

14.

Tonya Stuckey is the mother of Bryan D. Cranmore, Deceased, who was born on May 22, 1988 and died on December 15, 2018.

15.

Bryan D. Cranmore was not married at the time of his death and had no children.

16.

Tonya Stuckey, as the mother of Bryan D. Cranmore, Deceased and next of kin, is an heir entitled to prosecute this wrongful death claim on her own behalf and on behalf of the other heirs-at-law of Bryan D. Cranmore.

## BACKGROUND FACTS

17.

Plaintiff repeats and realleges the paragraphs above as if repeated herein verbatim.

18.

On dates prior to December 15, 2018, NSR used a railroad trestle over Beaverdam Creek more or less parallel with Arkwright Road, in Macon, Bibb County, Georgia (referred to herein as "the trestle").

19.

NSR owned the trestle, and the railroad track that went over the trestle.

20.

Prior to December 15, 2018 NSR was aware that the views from the trestle were considered scenic views.

21.

Prior to December 15, 2018 NSR was aware that people sat on the trestle.

22.

Prior to December 15, 2018 NSR was aware that people walked on the trestle.

23.

When a crew of a NSR freight train sees people on NSR property, in a manner that exposes the people, or NSR employees, to danger, the freight train crew is required by NSR practices, policies and procedures to report the presence of the people to NSR.

24.

When a NSR track inspector sees people on NSR property, in a manner that exposes the people, or NSR employees, to danger, the track inspector is required by NSR practices, policies and procedures to report the presence of the people to NSR.

25.

When the NSR division engineer is aware of people on NSR property, in a manner that exposes the people, or NSR employees, to danger, the division engineer is required by NSR practices, policies and procedures to take steps and implement procedures to reduce the likelihood of injury to people and NSR employees.

26.

NSR was aware that people on the trestle would be unable to appreciate the speed of a train approaching the trestle in time to escape the trestle prior to the arrival of the train.

27.

Prior to December 15, 2018 NSR was aware that people were sometimes on its trestles and that some of these people had died or been seriously injury because they were unable to get safely off the trestle prior to the arrival of a freight train.

28.

Knowing that the trestle presented a risk of catastrophic injury to people who were on the trestle when a train was crossing the trestle, NSR had a duty to warn foreseeable users of the trestle of this danger.

29.

On December 15, 2018, there were no signs placed by NSR warning people to stay off the trestle.

30.

On December 15, 2018, there were no signs placed by NSR warning people that if a freight train approached, they would not be able to hear it or see it in time to clear the trestle prior to its arrival on the trestle.

31.

On December 15, 2018, NSR did not have a whistle post to direct freight train crews to blow the train horn prior to arrival at the trestle to warn people who might be on the trestle to get off the trestle so that they could avoid injury or death.

32.

On December 15, 2018, NSR did not have fencing designed to deter people from going out onto the trestle.

33.

On December 15, 2018, NSR did not have a walkway, step out, or escape on the trestle to provide a place for people on the trestle to be safe and avoid being hit by a train that was on the trestle.

34.

Prior to December 15, 2018, NSR was aware that people on the trestle would be trapped, and unable to escape to safety, when a train approached the trestle.

35.

Prior to December 15, 2018, NSR made a conscious and intentional decision not to have its trains blow their horns to warn people on the trestle to get off the trestle.

36.

Prior to December 15, 2018, NSR had meetings about people being on railroad trestles and during these meetings NSR management and legal counsel made a conscious and intentional decision that warning people about the dangers of being on a trestle might expose NSR to potential civil liability because of the possibility that such warnings would be considered admissions by NSR that it was aware of people on its trestles and thus should have taken a more proactive stance to protect them from injury and death.

37.

NSR was aware that people on the trestle would be unable to see or hear approaching trains and that the trestle was therefore a trap that had the potential to cause catastrophic injury and death to any person on the trestle when a train used the trestle.

38.

NSR was indifferent to the risks created by the trestle and had no rule, policy, practice or procedure in place to regularly and systematically ensure that the trestle and the track approaching it were properly and adequately marked with warnings so that it would be visible to users of the users of the trestle to apprise them of the risk of being on the trestle.

39.

Despite knowledge of the risks and dangers created by the trestle, NSR was indifferent to the risks the trestle presented to people who ventured out onto the trestle.

40.

By failing to erect, maintain, or provide warnings about the dangers of being on the trestle, NSR was wanton and failed to exercise any care whatsoever toward those to whom it owed a duty of care under circumstances with a great probability of harmful results.

41.

NSR is aware that because the trestle cannot be escaped in time to avoid injury when a freight train is discovered by people on the trestle, that the trestle is a mantrap; they are trapped before they can appreciate the danger it creates, and be injured or killed on the trestle as a result.

42.

NSR is aware that the trestle has evolved into a mantrap because of changes in the speed of trains approaching the trestle, changes in the volume of sound produced by trains approaching the trestle, and by the fact that the trains approaching the trestle do not sound the horn prior to arriving at the trestle so as to provide maximum warnings to people on the trestle.

43.

The trestle presents unique local conditions and hazards to the use of the track that goes over the trestle because of the popularity of use of the trestle for recreational purposes.

44.

Because of the unique local conditions and hazards associated with the railroad track that goes over the trestle, NSR should have run its trains slower than the approved track speed.

45.

Choosing to provide no warnings and run its trains without regard to the presence of people on the trestle was an ultra-hazardous activity by NSR.

46.

Using the trestle without reducing train speeds allowed the trestle to become a trap from which people on the trestle were unlikely to escape.

47.

NSR's failure to react to reports of people on and near the trestle by freight train crews was willful and wanton conduct that disregarded the health and safety of human beings who might be on the trestle and not realize the dangers it presented.

48.

Choosing to treat the trestle as if it were track from which people on it could easily escape an approaching train constituted a reckless disregard by NSR for the safety of others because NSR knew, or had reason to know, of these facts which would lead a reasonable man to realize not only that his conduct creates an unreasonable risk of physical harm to another, but also that the risk is substantially greater than that which is necessary to accomplish his purpose.

49.

NSR's conduct in not providing appropriate warnings and in running its trains at full speed over the trestle is reckless conduct because it involves an easily perceptible danger of death or substantial physical harm by NSR.

50.

On December 15, 2018, Bryan D. Cranmore and Cory D. Cranmore went out onto the trestle.

51.

Bryan D. Cranmore and Cory D. Cranmore were unaware that the trestle presented a danger to them from which they could not escape.

52.

Bryan D. Cranmore and Cory D. Cranmore did not appreciate that the trestle was a trap in that once they were on it, and a train approached, it was known to NSR that they would likely be injured or killed, but not to them.

53.

There were no "No Trespassing" signs on the immediate approaches to the trestle.

54.

There were no warning signs advising Bryan D. Cranmore and Cory D. Cranmore that they would not be able to escape from the trestle if a train approached while they were on it.

55.

Bryan D. Cranmore and Cory D. Cranmore were not warned by a train horn, in time to escape the trestle, that a train was approaching the trestle.

56.

On December 15, 2018 a NSR train approached the trestle at an excessive rate of speed given the unique local conditions presented by the trestle, without adequate warnings, while Bryan D. Cranmore and Cory D. Cranmore were on the trestle.

57.

Bryan D. Cranmore and Cory D. Cranmore were unable to escape the trestle when NSR's train approached and they were both killed as a result.

## COUNT ONE AGAINST DEFENDANTS NSR

### (Pre-death Pain and Suffering – Negligence)

58.

Plaintiff repeats and realleges the paragraphs above as if repeated herein verbatim.

59.

As a direct and proximate result of the negligence of NSR, Bryan suffered severe bodily injuries of which he was aware prior to being killed. He also suffered pre-death fright.

60.

As a direct and proximate result of the negligence of NSR, the Estate of Bryan D. Cranmore is entitled to recover damages for all pain and suffering endured by Bryan as well as all medical and funeral costs incurred.

## COUNT TWO AGAINST NSR

### (Pre-death Pain and Suffering – Willful and Wanton Conduct)

61.

Plaintiff repeats and realleges the paragraphs above as if repeated herein verbatim.

62.

As a direct and proximate result of the intentional knowing willful and wanton conduct of NSR, Bryan suffered severe bodily injuries of which he was aware prior to death. He also suffered pre-death fright.

63.

As a direct and proximate result of the willful and wanton conduct of NSR, the Estate of Bryan D. Cranmore is entitled to recover damages for all pain and suffering endured by Bryan as well as all medical and funeral costs incurred.

## COUNT THREE AGAINST DEFENDANT NSR

### (Pre-death Pain and Suffering – Punitive Damages)

64.

Plaintiff repeats and realleges the paragraphs above as if repeated herein verbatim.

65.

The conduct of NSR in failing to take proper steps to prevent incidents like the one described above from occurring, to properly warn people who walked or sat on the trestle, to mitigate the dangers posed by the use of the trestle by members of the community and their other acts and omissions related to the trestle and their operation of trains at the trestle, was willful, wanton and in callous disregard for human life.

- 12 -

66.

Because Bryan suffered pre-death fright, pain and suffering as a direct and proximate result of NSR's willful, wanton and callous conduct, NSR should be punished to deter it from similar conduct in the future and punitive damages should be imposed against NSR and awarded to Plaintiff in the amount sufficient to punish and deter its conduct.

## COUNT FOUR AGAINST DEFENDANT NSR

### (Wrongful Death – Negligence)

67.

Plaintiff repeats and realleges the paragraphs above as if repeated herein verbatim.

68.

As a direct and proximate result of the negligence of NSR, Bryan was caused to lose his life.

69.

As a direct and proximate result of the negligence of NSR, the heirs of Bryan D. Cranmore are entitled to recover damages for the whole value of Bryan's life.

## COUNT FIVE AGAINST DEFENDANT NSR

### (Wrongful Death – Willful and Wanton Conduct)

70.

Plaintiff repeats and realleges the paragraphs above as if repeated herein verbatim.

71.

As a direct and proximate result of the intentional knowing willful and wanton conduct of NSR, Bryan was caused to lose his life.

72.

As a direct and proximate result of the willful and wanton conduct of NSR, the heirs of Bryan D. Cranmore are entitled to recover damages for the whole value of Bryan's life.

WHEREFORE, Plaintiff prays FOR A TRIAL BY JURY, that summons issue, that judgment be entered in favor of Plaintiff and against Defendants, and each of them, and that the following relief be granted:

    (a)    Under Count One, that Plaintiff be awarded general damages against NSR in an amount to be determined by a jury of Plaintiff's peers;

    (b)    Under Count Two, that Plaintiff be awarded general damages against NSR in an amount to be determined by a jury of Plaintiff's peers;

    (c)    Under Count Three, that punitive damages be imposed against NSR to punish and deter in an amount to be determined by a jury of Plaintiff's peers;

(d)     Under Count Four, that Plaintiff be awarded damages against NSR for the
whole value of the life of Bryan D. Cranmore in an amount to be determined
by a jury of Plaintiff's peers;

(e)     Under Count Five, that Plaintiff be awarded damages against NSR for the
whole value of the life of Bryan D. Cranmore in an amount to be determined
by a jury of Plaintiff's peers;

(p)     That this matter be tried to a jury;

(q)     That all costs be cast against Defendants; and

(r)     For such other and further relief as the Court deems just and proper.


Respectfully submitted this 15th day of December 2020.


WARSHAUER LAW GROUP, P.C.


/s/ Michael J. Warshauer
Michael J. Warshauer
Georgia Bar No. 018720
Trent Shuping
Georgia Bar No. 159083


2740 Bert Adams Road
Atlanta, Georgia 30339
T: 404.892.4900
F: 404.892.1020
mwarshauer@warlawgroup.com
tss@warlawgroup.com
*Attorneys for Plaintiff*